NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 92

No. 2020-070

| Angela Blake | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Damon Petrie | June Term, 2020 |

Thomas Carlson, J.

Samantha V. Lednicky of Murdock Hughes Twarog Tarnelli Attorneys at Law, P.C., Burlington, for Plaintiff-Appellee

Jacob Oblak of Bergeron, Paradis & Fitzpatrick, LLP, Essex Junction, for Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.     **EATON, J.**   Damon Petrie appeals the family division's denial of his motion to dismiss his ex-wife, Angela Blake's, attempt to enforce a judgment she obtained in their divorce action. Petrie claimed enforcement of the judgment was barred by the applicable statute of limitations because the judgment was not renewed within the required time. In denying the motion, the family division found Blake had complied with the family division rules for enforcement proceedings and with 12 V.S.A. § 506. It then granted Petrie's motion for interlocutory appeal to this Court. We agree that Petrie's motion to dismiss should have been granted and therefore reverse and enter judgment in his favor.

¶ 2.     The relevant procedural history is as follows. The parties were divorced on November 15, 2007, in an action which had been filed by Blake in 2006. The final divorce order incorporated the parties' marital settlement agreement. The property-settlement portion of the

agreement required Petrie to make both monthly and annual payments to Blake until the sum of $41,000 had been paid, with the first payment due on November 1, 2007. While Petrie could pay the balance of the $41,000 before it was due, the agreement "assumed" the payments would be completed by April 2011. The marital settlement agreement clearly established these payments as a portion of the parties' property settlement. The parties do not dispute that the divorce order was a civil judgment. See 15 V.S.A. § 554(b) ("A decree of divorce shall constitute a civil judgment under the Vermont Rules of Civil Procedure."). No appeal of the parties' property settlement was taken at that time.

¶ 3.     In June 2011, Blake filed a motion for contempt, enforcement, and sanctions, alleging, inter alia, that Petrie was delinquent in his monthly property-settlement payments.[1] Blake claimed the last property-settlement payment she received was in May 2010, and that she was owed $17,500, exclusive of interest, in property-settlement monies as of May 2011. Following a hearing on the motion, the family division entered a judgment in Blake's favor which included the delinquent property-settlement payments of $17,500 plus interest at the statutory rate. It reserved the issue of attorney's fees for enforcement. That judgment was filed on October 4, 2011.

¶ 4.     In August 2019, Blake filed another motion in the 2006 divorce action seeking enforcement of the delinquent property-settlement sum, along with interest and attorney's fees. This time, her motion sought enforcement of the October 2011 judgment as opposed to the one issued in 2007. She alleged no payments had been made since the October 2011 judgment and sought the unpaid balance of $17,500 plus attorney's fees—both those previously reserved in 2011 and for the current motion—and interest. In response, on October 25, 2019, eight years and three weeks after the 2011 judgment issued, Petrie filed a motion to dismiss, alleging that 12 V.S.A. § 506—the statute of limitations for "[a]ctions on judgments and actions for the renewal or revival of judgments"—"bars enforcement of the judgment at issue."

---

[1]  The motion also sought enforcement of Petrie's obligations concerning child support, proof of life insurance, and unpaid expenses for the parties' minor child.

2

¶ 5.    Petrie alleged that the original judgment from 2007 controlled the statute-of-limitations calculation under 12 V.S.A. § 506, and even if it did not, the October 2011 judgment was also time-barred because Blake had not renewed the judgment within eight years of its rendition.  Blake opposed the motion, arguing that the 2011 judgment controlled and the action was not time-barred because her August 2019 enforcement motion was the proper procedure for seeking enforcement of a family division judgment and therefore tolled the statute of limitations.

¶ 6.    Relying primarily on Vermont Rule for Family Proceedings 4.2, the family division reasoned that, with respect to post-judgment motions, the Family Rules require service in the same manner as a complaint, and an opportunity to be heard that is indistinguishable from a new and independent action.  It further determined that the Family Rules, unlike those in the civil division, spell out a specific procedure for enforcement of a judgment, including obtaining a new judgment for an amount due under an earlier judgment.  See V.R.F.P. 4.2.  It noted that 12 V.S.A. § 506 did not define what constitutes "a new and independent action."  In denying the dismissal motion, the trial court held the motion to enforce filed by Blake satisfied substantive and procedural concerns identified in prior Vermont precedent, the Family Rules for enforcement proceedings, and the requirement in 12 V.S.A. § 506 for a new action.  It determined the 2011 judgment was a new judgment for purposes of Civil Rule 54 and that the motion to enforce was timely under 12 V.S.A. § 506.  See V.R.C.P. 54(a) (defining "judgment" as used in Civil Rules to "include[] a decree and any order from which an appeal lies").  It then granted interlocutory appeal of the denial of Petrie's motion to dismiss.

¶ 7.    "We review a motion to dismiss using the same standard as the trial court." Davis v. Am. Legion, Dep't of Vt., 2014 VT 134, ¶ 12, 198 Vt. 204, 114 A.3d 99 (quotation omitted); see also Prive v. Vt. Asbestos Grp., 2010 VT 2, ¶ 14, 187 Vt. 280, 992 A.2d 1035 ("[O]ur review of a motion to dismiss is de novo . . . .").  Thereunder, motions to dismiss are generally disfavored and rarely granted.  Prive, 2010 VT 2, ¶ 14.  We must "tak[e] all of the nonmoving party's factual allegations as true," and consider whether "it appears beyond doubt that there exist no facts or

3

circumstances that would entitle the plaintiff to relief. We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false." Alger v. Dep't of Labor & Indus., 2006 VT 115, ¶ 12, 181 Vt. 309, 917 A.2d 508 (citations and quotations omitted). Where, as here, the availability of relief turns on a question of statutory interpretation, our review of the trial court's conclusions is nondeferential and plenary. Marine Midland Bank v. Bicknell, 2004 VT 25, ¶ 3, 176 Vt. 389, 848 A.2d 1134 (observing in context of motion to dismiss that whether action on judgment is barred by 12 V.S.A. § 506 is "matter[] of statutory interpretation"). "We look first to the plain meaning of the statutory language, and if it is clear and unambiguous, we will apply it[] without resorting to statutory construction or determination of legislative intent." Id. Although disfavored, motions to dismiss should be granted when it is beyond doubt that there are no facts or circumstances which would entitle the plaintiff to relief. Severson v. City of Burlington, 2019 VT 41, ¶ 9, __ Vt. __, 215 A.3d 102.

¶ 8. Vermont has a statute of limitations which applies to judgments rendered by a court. Title 12 V.S.A. § 506 provides that "[a]ctions on judgments and actions for the renewal or revival of judgments shall be brought by filing a new and independent action on the judgment within eight years after the rendition of the judgment, and not after." Thus, under Vermont law, judgments must be acted upon or renewed within eight years of the date they were rendered. H&E Equip. Servs., Inc. v. Cassani Elec., Inc., 2017 VT 17, ¶ 12, 204 Vt. 559, 169 A.3d 1308. The failure to timely renew a judgment time-bars an action seeking collection on the judgment. See id. The eight-year period for renewal of judgments aligns with the eight years provided for the court to issue execution on a judgment pursuant to 12 V.S.A. § 2681.

¶ 9. Vermont has established a legislative policy setting a definite time in which a creditor can enforce payment of a debt by allowing the same amount of time for actions on a judgment or execution. Marine Midland Bank, 2004 VT 25, ¶ 10. The eight-year statute of limitations for actions on a judgment is also a specific exception to the general six-year limitation

4

period for other civil actions set forth in 12 V.S.A. § 511, and provides a judgment creditor with an additional two years to bring an action to renew the judgment debt.

¶ 10. Blake asserts, and the trial court agreed, that her 2019 motion to enforce constituted a "new and independent action on the judgment" sufficient to renew the 2011 judgment, which she contends was a new judgment resetting the statute of limitations clock from the original 2007 judgment. We disagree.

¶ 11. The trial court felt that because the 2011 judgment—and presumably the 2007 judgment—were judgments issued in the family division, their renewal was governed by the Family Rules rather than solely by 12 V.S.A. § 506. Both judgments for which Blake sought enforcement were for the payment of money in the property-settlement aspect of the parties' divorce. Before considering the application of the Family Rules, it is instructive to review our previous decisions and the history of 12 V.S.A. § 506.

¶ 12. We have had occasion to consider the requirements of 12 V.S.A. § 506 several times in recent years. At the outset, it is important to recognize the difference between a motion to enforce an existing judgment and an action to renew a judgment. An enforcement motion seeks the court's assistance in enforcing what the court has previously ordered. See Aither v. Estate of Aither, 2006 VT 111, ¶ 11, 180 Vt. 472, 913 A.2d 376 (observing that "[i]t is axiomatic that a court must have the power to enforce its own orders" (quotation omitted)). In the case of a money judgment, a motion to enforce seeks court intervention, in any number of ways, to assist the judgment creditor to collect monies due from the judgment debtor. See Simendinger v. Simendinger, 2015 VT 118, ¶ 9, 200 Vt. 378, 131 A.3d 744 (recognizing that family court may use its equitable power to enforce its own valid order regarding money settlement in lieu of spousal maintenance so as to avoid unjust results). On the other hand, an action to renew a judgment does not seek assistance in collecting on the debt, but rather is an action to keep the existing judgment debt alive for another eight years. Koerber v. Middlesex Coll., 136 Vt. 4, 6, 383 A.2d 1054, 1055 (1978) (explaining that civil action on a judgment "is a new and independent action, and not merely

5

a means of enforcing a judgment, as is a writ of execution"); see also Restatement (First) of Judgments § 47, cmt. e (1942) (observing that debt is created by money judgment, and creditor "not only can maintain proceedings . . . for the enforcement of the judgment, but also can maintain an action upon the judgment").

¶ 13.   Our decisions under 12 V.S.A. § 506 have been consistent and stringent in rejecting anything short of a new and independent action as sufficient to renew a judgment.  In Nelson v. Russo, we considered whether seeking renewal of a judgment by motion under Vermont Rules of Civil Procedure 69 and 81, as opposed to filing a new action, was procedurally sufficient.  2008 VT 66, 184 Vt. 550, 956 A.2d 1117 (mem.).  At that time, 12 V.S.A. § 506 did not expressly require a "new and independent" action to renew a judgment, see 2009, No. 132 (Adj. Sess.), § 8, and Rule 69 provided:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. . . .
>
>  . . . Actions or motions to renew or revive judgments shall not be a prerequisite to issuance of a writ of execution as long as the eight-year [statute of limitations] period has not expired.

Russo, 2008 VT 66, ¶ 8 (alterations in original) (emphasis added) (quoting V.R.C.P. 69 (2008)).

¶ 14.   Despite the language in Rule 69 suggesting a motion was a sufficient and appropriate way to renew a judgment, we rejected the contention that the rule authorized renewal by motion.  Id.  We also rejected several arguments that V.R.C.P. 81 likewise provided for renewal by motion.[2]  See id. ¶ 9.  While finding that an action to renew a judgment was required, the Russo Court acknowledged the confusing reference to renewal by motion in Rule 69 and referred the

---

[2]  The original judgment in Russo had been issued by default, and the court noted the absence of an ability to be heard if the judgment could be renewed by motion, having in mind that no notice of the renewal motion was provided to the defendant.  2008 VT 66, ¶ 10.  In addition, the court found the requirement of 12 V.S.A. § 2681(b)—that small claims judgments must be renewed by a new small claims action—evidenced a presumption that an action was already required for renewals in superior court cases because of the greater implications of those decisions.  Id. ¶ 11.

question of whether a special procedural rule should be created to the Civil Rules Committee.[3] Id. ¶ 12.

¶ 15.    Following Russo, the Legislature amended 12 V.S.A. § 506 by adding the language of "by filing a new and independent action" to the statute. 2009, No. 132 (Adj. Sess.), § 8. The statute remains unchanged since that time, expressly requiring that renewals of judgments must be brought by filing a new and independent action seeking renewal.

¶ 16.    In Ayer v. Hemingway, we rejected the contention that a motion for possessory writ of attachment followed by a new, stipulated judgment order was sufficient to renew a 2001 judgment. 2013 VT 37, ¶ 12, 193 Vt. 610, 73 A.3d 673. In so holding, we stated, "Russo plainly requires a new and independent suit initiated by the filing of a complaint, not the filing of something that is arguably akin to a complaint. Any other conclusion would reintroduce uncertainty into the judgment renewal process. We thus hold that the 2001 judgment was not properly renewed."[4] Id. ¶ 16.

¶ 17.    Most recently, we reaffirmed Koerber v. Middlesex College's holding that once an original judgment has been properly renewed by a new and independent action, the date of the renewed judgment controls for purposes of calculating the statute of limitations. H&E Equip. Servs., 2017 VT 17, ¶ 12 (holding that " 'rendition of the judgment' " language in § 506 is not

---

[3]  V.R.C.P. 69 was amended in 2012 to eliminate any reference to renewal of a judgment by motion to make it consistent with 12 V.S.A. § 506. Reporter's Notes—2012 Amendment, V.R.C.P. 69 (observing that "[t]he amendment, consistent with [Russo] . . . eliminates 'motion' as a means of seeking revival or renewal of a judgment").

[4]  Ayer also rejected the contention, over a dissent, that the 2006 judgment order updating the amounts due under the original 2001 default judgment was the appropriate yardstick by which to measure the running of the eight-year statutory period, finding that the final judgment is the one that makes the final disposition of the subject matter before the court and observing that to allow renewal by motion seeking an updated judgment would allow for "a continually moving statute of limitations." 2013 VT 37, ¶¶ 18-19. Flex-A-Seal, Inc. v. Safford involved issues similar to Ayer, finding that a stipulated order in an independent renewal action updating a judgment did not restart the statute-of-limitations clock and thus the renewal action was time-barred. 2015 VT 40, ¶ 14, 198 Vt. 496, 117 A.3d 823 (holding that intervening stipulated order setting forth original judgment amount with interest " 'was not a new decision on the merits' " resetting statute of limitations).

limited to original judgment and observing that provision "specifically provides for the renewal of judgments; obviously, renewed judgments may be enforced or there would be no point in renewing them"); see also Koerber, 139 Vt. at 9, 383 A.2d at 1057 ("[I]f the statute of limitation period has almost run upon the judgment, the judgment creditor can start the limitation period anew by bringing an action upon the judgment and obtaining a new judgment." (citation omitted)).

¶ 18.    With the requirements of 12 V.S.A. § 506 looming large, there are two potential avenues by which the denial of the motion to dismiss might be affirmed: either there was compliance with the statute, or the statute does not apply.  The trial court considered both; we find neither persuasive.

¶ 19.    As for compliance with the statute, the trial court noted that 12 V.S.A. § 506 does not explicitly set forth what constitutes a new action, perhaps suggesting there is some ambiguity as to the meaning of "a new and independent action."  We do not find those terms unclear or ambiguous.  The terms "new" and "independent" must be read together to mean an action separate and apart from the one giving rise to the judgment sought to be renewed.  When a statute is plain on its face, there is no need for construction.  Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) (per curiam) ("[T]he legislative intent is to be ascertained from the act itself, which is presumed to be in accordance with the ordinary meaning of the statutory language.").  As far back as Russo, we have recognized that a renewal action requires a new and independent action initiated by the filing of a complaint.  2008 VT 66, ¶ 9.  In Russo we required a new action, not a motion filed in the pending action, which was even before 12 V.S.A. § 506 was amended to expressly require a new and independent action.  Id. ¶ 6 (observing that § 506 then did "not answer the precise question . . . of whether filing an independent action is the only way to renew an unsatisfied judgment").  Nothing is ambiguous about the requirements of 12 V.S.A. § 506 as it reads today or our decisions thereunder.

¶ 20.    The trial court's determination that an enforcement motion is a "new action" which complies with the requirements of 12 V.S.A. § 506 ignores our precedent under the statute,

especially <u>Russo</u> and <u>Ayer</u>, and ignores the statutory requirement that the renewal action must be both a new action and also be independent of the prior one. Here, both motions seeking enforcement of the judgments were filed in the original 2006 divorce action. There was no new action; there was no independent action. Therefore, if 12 V.S.A. § 506 applies to this attempt at renewal, the statutory requirements were not met.

¶ 21. Although not argued by the parties below, the trial court relied on Family Rule 4.2 as providing the procedure for renewal of a judgment in this case. The trial court was correct that Rule 4.2 governs all post-judgment proceedings in actions for divorce, with certain exceptions not relevant here. If the property-settlement judgment against Petrie was still enforceable, Rule 4.2 would provide the procedure for filing an enforcement motion. But nothing in Rule 4.2 indicates it applies to an action for the renewal of a judgment or that the statute-of-limitations and renewal requirements of 12 V.S.A. § 506, which applies to all civil judgments, including divorce decrees, is inapplicable to a property-settlement judgment issued in the family division.[5] The Vermont Rules for Family Proceedings contain no provision regarding renewal of a civil judgment. See V.R.F.P. 4.0(a)(2) (providing civil procedural rules apply in post-judgment divorce proceedings absent specific exemption). The effort to collect on a judgment by seeking enforcement of the court's judgment order is a different matter from whether the judgment is no longer valid because the statute of limitations on the judgment has expired before it was renewed.

¶ 22. Additionally, Family Rule 4.2 is limited by its own terms to post-judgment proceedings in an existing divorce action. See V.R.F.P. 4.2(a). The renewal of a judgment, in contrast, must be done by a new and independent action seeking to have the judgment renewed. It is an action on the judgment, not a post-judgment proceeding within a divorce action, which

---

[5] 15 V.S.A. § 606 applies to post-judgment actions to recover spousal maintenance, child support, or suit money awarded in a divorce. It allows a party entitled to payment to file a motion in the family division and obtain judgment on the court's "judgments, decrees, and orders previously rendered and still in force." <u>Id</u>. § 606(a). It does not apply to a money judgment rendered in a property settlement. See <u>id</u>.

9

satisfies the requirements of § 506. Rule 4.2 does not extend the statute of limitations on judgments and does not avail Blake in this instance. She could only successfully seek enforcement of a judgment which remained valid. That determination was governed by 12 V.S.A. § 506.

¶ 23. The Legislature has seen fit to set forth the requirements for renewal of judgments to include a new and independent action on the judgment. The Legislature could have allowed a judgment creditor to renew a judgment by filing a motion to renew the judgment in the original action. If that procedure were permitted, in the context of a judgment in a family case, Rule 4.2 would mandate service as in a new action, affording notice and an opportunity to be heard before renewal was granted.[6] However, the Legislature did not take that step, but rather amended 12 V.S.A. § 506 to specifically require a new and independent action to renew a civil judgment, following which the language in Civil Rule 69 suggesting renewal could be accomplished by motion was excised. 2009, No. 132 (Adj. Sess.), § 8; Reporter's Notes—2012 Amendment, V.R.C.P. 69. These steps have made it crystal clear that the Legislature has determined that nothing short of a new and independent action is sufficient to renew a judgment. Such conclusions are policy decisions which are theirs to make and to which we must accord deference.[7] Doyle v. City of Burlington Police Dep't, 2019 VT 66, ¶ 12, __ Vt. __, 219 A.3d 326 (rejecting parties' policy arguments because Court must accord deference to policy decisions made by the Legislature and enforce statutes according to their terms).

---

[6] As we said in Ayer, notice and an opportunity to respond to a motion to renew does not turn such a motion into a complaint. 2013 VT 37, ¶ 16.

[7] Statutes of limitations like 12 V.S.A. § 506 "reflect legislative judgments concerning the relative values of repose on the one hand, and vindication of both public and private legal rights on the other. They serve several governmental purposes, including fairness to defendants, protecting the court's interest in reliance and repose, and guarding against stale demands." Vt. Human Rights Comm'n v. State, Agency of Transp., 2012 VT 88, ¶ 14, 192 Vt. 552, 60 A.3d 702 (quotation and citation omitted). The finality concerns animating § 506 are no less salient where the judgment debtor is the judgment creditor's former spouse; indeed, Vermont law "places great emphasis on the finality of property divisions" in divorce. Youngbluth v. Youngbluth, 2010 VT 40, ¶ 10, 188 Vt. 53, 6 A.3d 677.

10

¶ 24. The parties dispute whether the 2007 or 2011 judgment is the operative one for purposes of this decision. Ayer and Flex-A- Seal each considered this issue outside of the family-division context, both holding the date of the original judgment was controlling. Flex-A-Seal, 2015 VT 40, ¶ 14; Ayer, 2013 VT 37, ¶ 18. However, based upon the record here we need not reach this issue. Assuming, without deciding, that the 2011 judgment order superseded the one issued in 2007, Blake did not file a new and independent action seeking renewal within the eight years following its rendition. Her 2019 enforcement motion was insufficient for that purpose and the statute of limitations therefore bars her attempt to seek enforcement under either judgment. The trial court should have granted Petrie's motion to dismiss.

Reversed.

FOR THE COURT:

_____
Associate Justice

¶ 25. **ROBINSON, J., concurring.** I agree with the majority that a motion to enforce a judgment for property division filed in the family division does not satisfy the requirement of 12 V.S.A. § 506 that a party seeking to renew a judgment file a "new and independent action on the judgment within eight years after the rendition of the judgment." I write separately to urge the Legislature to address the issue raised in this case—the applicability of the "new and independent action" requirement to the renewal of family division divorce judgments that include a property award.

¶ 26. Although the express terms of § 506, as amended in 2010, compel the outcome in this case, I doubt the Legislature expressly considered the impact of the "new and independent action" requirement on enforcement and renewal of property awards in the family division. The rationale underlying the statutory "new and independent action" requirement does not apply to property division awards in divorce cases. At the same time, application of the requirement to

11

divorce orders gives rise to unnecessary confusion and costs for divorce litigants who may be forced to simultaneously litigate some post-judgment issues in the family division and others in the civil division, and it imposes additional burdens on the court system. Amending § 506 so that a motion to enforce a property judgment in the family division pursuant to Vermont Rule of Family Proceedings 4.2 can serve to renew the judgment for purposes of § 506 would not undermine the goals of § 506. For these reasons, I urge the Legislature to revisit this statute.

¶ 27. In enacting the "new and independent action" requirement, the Legislature was not focused on the impact of that requirement in the family division. The Legislature added the requirement that a party seeking to renew a judgment to avoid the eight-year statute of limitations file a "new and independent action" in 2010, in the context of a bill establishing a required mediation program in foreclosure proceedings. See Act Summary, 2009, No. 132 (Adj. Sess.), https://legislature.vermont.gov/Documents/2010/Docs/BILLS/H-0590/ACT0132%20Act%20Su mmary.htm [https://perma.cc/5HUA-N7HF]. Although the bill focused on the mediation program and requirements, it included a number of provisions relating to real property that "essentially clean up the provisions from amendments passed in prior legislative sessions." Id. The initial bill did not include the "new and independent action" language; the Senate added the language to the bill initially passed by the House. Compare H.590, 2009-2010 Gen. Assem., Adj. Sess. (Vt. 2010) (as passed by House, Mar. 18, 2010), with H.590, 2009-2010 Gen. Assem., Adj. Sess. (Vt. 2010) (as passed by Senate, Apr. 26, 2010). The apparent intent of the amendment was to conform 12 V.S.A. § 506 to this Court's 2008 holding in Nelson v. Russo that a post-judgment motion was procedurally insufficient to renew a judgment under § 506. See 2008 VT 66, ¶ 6, 184 Vt. 550, 956 A.2d 1117 (mem.).

¶ 28. A critical rationale underlying the Court's decision in Russo does not apply in the context of post-judgment motions in the family division. In a case involving a post-judgment attempt to renew a judgment in the civil division by motion, the Russo Court concluded that the reference in § 506 to "actions for the renewal . . . of judgments" was intended to describe "a new

12

and independent suit commenced in accordance with [Vermont Rule of Civil Procedure 3]." Id. The Court explained that its construction would ensure due process for the party liable to pay a judgment:

> [W]e have recognized on numerous occasions that notice and an opportunity to be heard are indispensable to the provision of due process. In the present case, plaintiff's use of a motion to renew and failure to provide notice of the filing deprived defendant of the opportunity to raise any defenses to the motion. If, instead, plaintiff had been required to commence a new, independent action to renew, defendant would have received proper notice and an opportunity to be heard. The use of an action to renew plaintiff's judgment therefore would have guaranteed greater protection of defendant's constitutional rights.

Id. ¶ 10 (citations omitted). The Court's reasoning makes a lot of sense in the civil division, where a party who files a post-judgment motion to enforce is not required to serve the other party using the more exacting requirements that apply to service of initial process. Compare V.R.C.P. 4 (requiring personal service by authorized server for initial service of process), with V.R.C.P. 5(b) (providing generally for service of pleadings and other papers subsequent to original complaint by delivery to attorney or party, mail to attorney or party at last known address, or delivery or mail to clerk of court). The Court's due process concern does not apply to a post-judgment motion to enforce in the family division because the applicable rules of procedure require that a post-judgment motion to enforce or modify a divorce judgment be served "in the same manner as a complaint" by the appropriate method as outlined in the rule. V.R.F.P. 4.2. Wholly apart from § 506, a party seeking to enforce a property division judgment by motion in the family division is required to serve the other in the same manner as a complaint; the additional requirement in § 506 that the matter be filed as a separate action doesn't add any additional due process protection.

¶ 29. Moreover, applying the "new and independent action" requirement to final divorce judgments in the family division potentially adds unnecessary cost and confusion to the post-judgment enforcement process. A party may seek to enforce all financial aspects of a final divorce judgment—including property division, spousal maintenance, and child support—in the family

13

division. See 15 V.S.A. § 603(b) (authorizing civil contempt proceedings in family division when person disobeys a lawful order creating financial obligation). Based on today's ruling—apparently the first time this Court has considered whether and how § 506 applies to divorce judgments—in order to enforce a property award in a divorce judgment beyond the eight-year statute of limitations, a party must file a new and independent action in the civil division within eight years of the divorce judgment. If there are other pending financial issues, such as unpaid child support, spousal maintenance, or suit money, the party may seek to enforce those obligations in the family division. See id. § 606. Thus, parties may find themselves litigating various financial disputes arising from a single final divorce judgment in two different courts at the same time—with the added cost and confusion that entails.

¶ 30. This isn't just a theoretical concern; the arrangement has unfortunate impacts on access to justice for some Vermont litigants. Some divorce judgments include a property division award payable in installments over a period of time—in some cases, many years—as well as child-support or spousal-maintenance orders. This is a case in point. The family division's October 2011 judgment resolving Blake's prior contempt and enforcement motion reflects that Petrie had a child-support delinquency in excess of $12,000, and a property-settlement delinquency of $17,500. Requiring a party in Blake's shoes to initiate separate proceedings in two different courts in order to protect her various rights after eight years creates a high risk of confusion and imposes unnecessary burdens on the litigants. The complicated requirement that a party file a separate action in the civil division within eight years in order to renew and thus enforce a property award in a divorce is especially unfortunate in light of the fact that most divorce litigants represent themselves. See Vt. Joint Comm'n on the Future of Legal Servs., Final Reports & Recommendations of the First Year Study Committees 19 (Sept. 24, 2015), https://www.vtbar.org/UserFiles/files/Commission/Commission%20Report%20-%20 First % 2 0 Year%20Study.pdf [https://perma.cc/YV53-FSN3] (citing analysis by Judge Amy Davenport showing 54% of active divorces involved at least one self-represented litigant). The goal should

14

be to simplify and streamline the process for post-divorce enforcement proceedings, not to erect unnecessary obstacles to enforcement of a court judgment that effectively reward recalcitrant judgment debtors.

¶ 31. In addition, this framework burdens courts by requiring two separate proceedings where one would make more sense. That framework not only imposes greater costs on the court system, it forces both courts—the civil division and family division—to adjudicate the respective issues directed at each in isolation, without the flexibility to craft a remedy that makes the most sense in the context of the full set of outstanding financial issues between the parties.

¶ 32. Amending § 506 so that a party to a divorce can renew a property division order by filing a motion to enforce under V.R.F.P. 4.2 won't undermine the purposes of § 506. Traditional statutes of limitations are designed to "make necessary the bringing of an action within a reasonable time and thus prevent fraudulent and stale claims from being brought at a time when witnesses have died or disappeared and documentary evidence has been lost or destroyed." Reed v. Rosenfield, 115 Vt. 76, 79, 51 A.2d 189, 191 (1947). Section 506 is not a traditional statute of limitations in that it does not impose a fixed cutoff date after which a judgment creditor may no longer seek to enforce a judgment. As long as the judgment creditor periodically "renews" a judgment, it remains enforceable potentially forever. For that reason, § 506 does not, as the majority suggests, seek to promote "finality" in the way that traditional statutes of limitations do. See ante, ¶ 23, n.7. Rather, § 506 is more of a notice provision; it requires that a judgment creditor who intends to enforce an outstanding judgment provide notice to the judgment debtor by renewing the judgment before the expiration of eight years since the judgment, or since the last renewal. That is the reason this Court has recognized that "in actions of debt on judgment, an acknowledgment of the debt within the statute-of-limitations period remove[s] the statutory bar." Flex-A-Seal, Inc. v. Safford, 2015 VT 40, ¶ 17, 198 Vt. 496, 117 A.3d 823. We explained that a presumption arises from the lapse of time that a debt has been paid, but the presumption is rebutted by an acknowledgment of the debt within the limitations period, thereby satisfying the goals of the

15

limitations statute. Id. Whether a judgment creditor brings a new and independent action in the civil division, or files a motion in the family division, the filing serves the purpose of ensuring that the judgment debtor is on notice of the judgment creditor's continuing intent to enforce the unpaid judgment.

¶ 33.    Ultimately, as the majority rightly notes, the policy decision regarding whether and how to require parties to a divorce to renew the property award in a final divorce judgment as a prerequisite to enforcing it beyond the eight-year limitations period, is one for the Legislature. Ante, ¶ 23.    Because it is not clear that the Legislature has expressly considered the unique circumstances of divorce orders in the family division in enacting the broad language of § 506, and in light of the considerations set forth above, I urge it to do so.

¶ 34.    I am authorized to state that Chief Justice Reiber joins this concurrence.


_____
Associate Justice